## COPPER v. DOLVIN.

1. **Nuisance :** OVERHANGING EAVES: NOTICE TO ABATE. The eaves of defendant's roof projected over plaintiff's lot, and over a brick wall which he was erecting. Upon request, defendant had a tin spout placed under the eaves so as to keep the water from falling upon the wall. As the wall rose, the spout was found to be in the way, and plaintiff's workmen not only removed the spout, but cut the eaves back to make way for the wall. The water from an unusually heavy rain drenched the wall and caused it to fall. *Held* that a formal notice from plaintiff to defendant of the removal of the spout was not necessary to cast on defendant the duty to make other provision for the water, but that knowledge of the fact, no matter how obtained, was sufficient.

2. ———: ———: DUTY TO OBVIATE INJURY. In such case it was not the duty of plaintiff to enter upon defendant's building after the spout was removed, and make the repairs necessary to keep the water from running upon the wall. *Simpson v. City of Keokuk* 34 Iowa, 568, distinguished.

3. **Verdict :** INADEQUATE DAMAGES: NO RELIEF ON APPEAL. Although the trial court might have been justified in granting a new trial in this case on account of the inadequacy of the damages found by the jury, this court cannot interfere with its ruling in denying a new trial.

*Appeal from Clay District Court.*

FRIDAY, APRIL 23.

ACTION for the recovery of damages on account of an injury to a building belonging to plaintiff caused, as is

alleged, by water which fell from the roof of defendant's building upon plaintiff's premises. Verdict and judgment for plaintiff. Defendant appeals.

*E. C. Hughes*, for appellant.

*Parker & Richardson*, for appellee.

REED, J.—I. Plaintiff owns the north half and defendant the south half of a lot in the village of Spencer. A two-

**1. NUISANCE: overhanging eaves: notice to abate.**

story frame building was situated on defendant's half of the lot, the eaves of which projected over the line between it and plaintiff's · property. Plaintiff commenced the erection of a brick building on his ground, and, when the foundation wall was constructed, he requested defendant to make some provision for preventing the water which would fall from his roof from falling on the wall. Defendant accordingly caused a tin spouting to be constructed under the eaves, which would receive the water from the roof, and discharge it upon the roof of a one-story addition in the rear of the building. When plaintiff's wall was raised to within a foot or two of this spouting, it was discovered that it hung immediately over the wall, and that the work of building the wall could not be finished without removing it. The workmen employed on plaintiff's building accordingly removed it. They also sawed off the eaves of defendant's building to within a quarter of an inch of the line of the wall of the building. A few days after this was done, and before any other provision was made for conveying the water from the roof, a violent rain-storm occurred, and the water which fell from the roof poured upon and against plaintiff's wall, and caused it to fall, and it is for this injury that plaintiff seeks relief in this action.

The district court instructed the jury substantially as follows: (1) If the eaves and trough projected over or upon plaintiff's premises, and it could not reasonably have been removed from plaintiff's premises so as to leave it in a posi-

tion to carry away the water falling upon defendant's roof from plaintiff's building, then plaintiff had the right to remove the same entirely; and if he or his employes did remove it, then it was the duty of plaintiff to replace it, or to use other sufficient means to protect the property from the water flowing from defendant's roof, or to cause defendant to be notified that it had been removed, and that he was required to replace it, or make other provision to prevent the water falling from his roof from pouring upon plaintiff's property, and to give him a reasonable time to do the work. (2) That they would not be warranted in finding for plaintiff upon proof alone that the injury was caused by the water which fell from defendant's roof after the trough was removed; but that plaintiff was not entitled to recover, unless it was shown that defendant had been notified of the removal of the trough, and that he had had a reasonable time, after such notice was communicated to him, within which to replace it, or make other provision for the protection of plaintiff's property from the injury. (3) But if defendant was notified of the removal of the trough at such time before the injury as afforded him a reasonable opportunity to replace it, or make other provision to prevent the water from falling upon plaintiff's property, and he neglected to do so, and the injury occurred in consequence of this neglect, he was liable for the damages occasioned thereby.

It is insisted that the verdict of the jury is contrary to these instructions in the following particulars: (1) That it is shown by the evidence that it would have been practicable for plaintiff to set the trough back nearer to defendant's building, and that if this had been done it would have continued to conduct the water away from plaintiff's wall, and at the same time would not have interfered with the work upon the wall, and that under the first instruction he was required to do this instead of removing it entirely; (2) that no such notice of the removal of the trough as is required by the instruction was ever given to defendant; and (3) that the time

between the communication to him of the notice which was given him and the occurrence of the injury was so short as to afford no reasonable opportunity for doing what was required of him.

With reference to the first point we deem it sufficient to say that the question whether the construction of a gutter in the roof was not the only practicable means of preventing the water from falling upon plaintiff's building fairly arose in the case, and the finding of the jury on that question is not without support in the evidence, and under the rule that has always prevailed here we will not disturb the finding. No notice of the removal of the trough was ever communicated to defendant by plaintiff, or by his direction. There was evidence, however, which tended to prove that one of the workmen who removed the trough informed defendant that it had been removed, and requested him to make the necessary provision for preventing the water from falling on plaintiff's wall. It is contended that the doctrine of the instructions is that a notice from plaintiff of the removal of the trough was required before the defendant would be charged with the duty of making other provision for conducting the water away from his building, and that, as this communication was not made by his direction or request, it cannot be regarded as a notice from him. But we think this is not the meaning of the instructions. Defendant's duty in the premises was not created by the notice, but arose out of the fact that his building, in the condition in which it then was, created a nuisance. He knew that, unless some provision was made to prevent it, the water from his roof would fall upon plaintiff's premises, and, recognizing his obligation to make such provision, he had erected the spouting which, so long as it could be maintained in the position in which he had placed it, was sufficient for that purpose. But as the work on plaintiff's wall progressed it was found that the spouting itself was a nuisance, and that the wall could not be completed without removing it. As defendant, when

he erected it, had done all that then seemed to be necessary for the abatement of the original nuisance, it could be properly said, as was done in the instructions, that he was not required to do more until notified that it had become necessary to remove it.   But it was not meant by this that a formal notice of the fact must have been served upon him.   All that would be required in order to impose upon him the duty of abating the nuisance was that he be informed of its existence, and this was done when the information was communicated to him that it had become necessary to remove the spouting, and that it had been removed.   And this is the sense in which the term "notice to him" was used in the instructions, and it was doubtless so understood by the jury. The evidence tended to show that the information of the removal of the spouting was communicated to defendant two or three days before the occurrence of the injury.   It was for the jury to say, under all the circumstances of the case, whether he might, by the exercise of reasonable diligence, have made the necessary repairs within that time; and we cannot interfere with their finding on the question.

II.   The district court refused to give a number of instructions asked by defendant, which expressed the doctrine that if plaintiff might, by the exercise of ordinary care, have avoided the consequence of defendant's negligence, or if he might, by the use of ordinary efforts, have avoided the injury, he could not recover.   This doctrine is not expressed in any instruction given by the court on its own motion.   The refusal of the court to give these instructions is assigned as error.   It is not claimed that there was any evidence that plaintiff was guilty of any negligence in anything he had done upon his own premises, or in omitting to do anything which was essential for the protection of the property; but the position of counsel is that, as the removal of the spout was his own act, and as he had the right to enter upon defendant's premises for the purpose of abating the nuisance, he was not justified in waiting for defendant to make the repairs

upon the roof, but that it was his duty to go upon the building and construct the necessary gutter, which he could have done by a slight outlay of labor and money; and that, as he neglected to do this, he cannot recover for the injury which resulted from the failure to construct such gutter. The general rule undoubtedly is that one cannot recover for an injury which is occasioned by the wrong of another, but which he might have prevented by a slight expenditure of labor or money. This rule has often been applied by this court.

In *Simpson v. City of Keokuk*, 34 Iowa, 568, it was held that the plaintiff could not recover for an injury to his property which was occasioned by the negligent manner in which the officers of the city had constructed the gutters and drains in its streets and alleys, for the reason that, by a slight expenditure of labor upon his lot, he might have prevented the injury; and the same rule was applied in the cases cited in the opinion, and in other cases which have since been decided.

We think, however, that the facts of the present case do not bring it within the operation of that rule. The immediate cause of the injury was the storm, which was of unusual violence. This could not have been anticipated by plaintiff. If the gutter had been constructed before the storm occurred, it would have prevented the injury. But, as an injury of that character was not to be apprehended in the ordinary course of events, there was no such emergency as would have justified plaintiff in entering upon defendant's premises for the purpose of abating the nuisance. A person may abate a nuisance upon the premises of another when the same is injurious to him, or (possibly) when there is a reasonable certainty that he will be injured by it. Wood, Nuis., §§ 33, 844, 845. But it cannot be said that he is negligent in not abating such nuisance, unless there is an apparent danger, at least, that he will sustain some substantial damage from it. In addition to this is the consideration that the gutter,

when constructed, would be a substantial improvement of defendant's property. It should be constructed with the view of protecting defendant's building as well as that of plaintiff. While circumstances might possibly arise which would justify one in making such an improvement on the property of another in order to protect his own premises from injury, we do not think there was any evidence tending to show the existence of such circumstances in the present case.

III. The evidence shows that the damage to plaintiff's building amounted to as much as $600, while the jury awarded him but $100. Counsel for defendant contends that this affords evidence of such a satisfactory character that the verdict was the result of a compromise by the jury, rather than a deliberate judgment upon the evidence, that it should not be permitted to stand. While it may be that the trial court would have been justified in setting the verdict aside for this reason, we think it affords no ground upon which we can disturb it. Our province, in actions of this kind, is to review the rulings and decisions of the lower courts, and we are justified in reversing judgments rendered by them only when it is apparent that they have committed errors which affect the substantial rights of the parties, and we cannot say that the district court committed an error in refusing to set the verdict aside on this ground.

3. VERDICT: inadequate damages: no relief on appeal.

The judgment will be

AFFIRMED.